```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Bernard Cannady, Jr.,            :

    Plaintiff,               :

  v.                              :     Case No. 2:07-cv-800

Michael J. Astrue,               :
Commissioner of Social Security,      MAGISTRATE JUDGE KEMP
                                 :
    Defendant.

## OPINION AND ORDER

### I.

Plaintiff, Bernard Cannady, Jr., filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  That application, filed on August 11, 2003, alleged that plaintiff became disabled on September 20, 2000, as a result of problems with his heart, lungs, and legs.

After initial administrative denials of his claim, plaintiff was given a hearing before an Administrative Law Judge on May 19, 2006.  In a decision dated December 12, 2006, the Administrative Law Judge denied benefits.  That decision became the final decision of the Commissioner when the Appeals Council denied review on June 25, 2007.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on October 16, 2007.  Plaintiff filed a Statement of Errors on November 13, 2007, to which the Commissioner responded on December 27, 2007.  No reply brief was filed, and the matter is now ripe for decision.

### II.

Plaintiff testified to the following at the administrative hearing. Plaintiff, who was 50 years old at the time of the

administrative hearing, has an eleventh grade education. (Tr. 450). He worked in the past as a security guard at a food warehouse and as a long-haul truck driver. (Tr. 451-52). He suffered a heart attack in 2000 while working as a truck driver, and subsequently had two strokes. (Tr. 453).

Plaintiff testified that he experiences chest pain occasionally, for which his doctor prescribes baby aspirin. This occurs once or twice per month. (Tr. 456-57). The pain is relieved by lying down. (Tr. 457). He experiences shortness of breath in extremely hot or cold weather. (Tr. 458). He can walk twenty feet before experiencing back and knee pain and becoming short of breath. Id. He cannot stand or sit for more than a few minutes at a time. (Tr. 458-59). He cannot lift a gallon of milk without dropping it. (Tr. 459).

Plaintiff has been told that he has a seizure disorder. He has never seen a mental health professional other than the one who performed an evaluation for the Social Security Administration. (Tr. 460-61). He had an MRI done on his right knee which showed abnormalities. (Tr. 462). He uses an inhaler for asthma. Id. His daily activity consists of watching television, and he does no household chores. (Tr. 465-66). He spends almost all of his time lying down due to severe back pain. (Tr. 471).

### III.

The Court will summarize the pertinent medical records. On June 20, 2000, plaintiff was seen at the Mesquite Community Hospital complaining of chest pain. A myocardial infarction was ruled out and he was discharged with instructions to modify his diet, stop smoking, and continue to take baby aspirin. (Tr. 401-12).

Plaintiff was evaluated by a psychologist, Dr. Ashbrook, on June 6, 2002, at the request of the Ohio Department of Job and

Family Services, and took a number of tests four days later.  He reported having suffered a heart attack in 1999, and then strokes in February and September, 2002.  His mood was normal but he reported a history of depression.  His full-scale IQ was measured at 74 and his working memory was intact.  He displayed an average ability to learn new information.  The only diagnosis was a cognitive disorder, and his GAF was rated at 51.  He was not considered employable for a period of 30 days to nine months. (Tr. 174-83).

Plaintiff had a CT scan of his lung in 2002.  It showed a large bulla and some small bullae and blebs in the right lung. There were also some emphysematous changes in the right lung. (Tr. 189).  He was subsequently seen by Dr. Dyer, who noted that plaintiff did not report shortness of breath after walking one block.  At that time, he was walking one to two miles per day. He did not report any chest pain.  Surgical options to resect the bleb were explained but surgery was deferred.  Plaintiff was advised to seek immediate attention if he experienced any sudden, sharp chest pain.  (Tr. 191-94).

Dr. Gatto, a cardiologist, responded to a questionnaire dated September 17, 2002, indicating that he had seen plaintiff for one month and that plaintiff experienced both chest discomfort and shortness of breath.  His records showed that plaintiff had chest pain that was probably non-cardiac in origin and exercise intolerance unrelated to left ventricular dysfunction.  He had undergone a stress test which did not show any evidence of exercise-induced ischemia.  Dr. Gatto stated that plaintiff was "doing well at this time."  (Tr. 198-204). Plaintiff subsequently underwent a cardiac catheterization which showed no significant coronary artery disease.  (Tr. 213).

Dr. Dillahunt reviewed plaintiff's records and assessed his residual functional capacity in a report dated November 22, 2002.

He believed plaintiff could function at the light exertional level and had some postural and environmental restrictions. (Tr. 221-25). A year later, and after review of additional records described below, another state agency reviewer, Dr. DeMuth, thought plaintiff could do an unlimited range of medium work. (Tr. 330-37).

Plaintiff reported symptoms of confusion and numbness in 2002. As a result, he underwent an EEG and other testing administered by Dr. Hussein. All of the results were normal. (Tr. 230-39). Dr. Hussein saw plaintiff again in 2003, at which time plaintiff reported that his headaches had been stable but he continued to have abnormal sensations in his hands and legs. He was continued on Neurontin and Vicodin. (Tr. 272).

Plaintiff's mental residual functional capacity was evaluated by Dr. Williams on November 18, 2002. She identified only a few moderate limitations, and nothing that would affect his ability to do simple tasks. (Tr. 246-51).

Plaintiff underwent a second psychological evaluation, this time by Dr. Rain, on September 23, 2003. Plaintiff reported confusion and memory problems as well as depression, all of which were evident during the evaluation. He also reported extremely severe back pain but that was not apparent to Dr. Rain. His performance on tests was slow, which could be a product of either cognitive dysfunction or less than full effort. He did report going out of the house with his parents but avoiding the public as much as possible. His lifestyle was described as "neurovegetative." His full scale IQ was measured at 54 but that was not believed to be accurate. Dr. Rain diagnosed a schizoid personality disorder and a mood disorder and thought plaintiff's ability to do most work-related activities was poor. He rated plaintiff's GAF at either 40 or 50. (Tr. 266-71).

Plaintiff was again evaluated at the request of ODJFS in

September and October of 2003.  He reported the barriers to his employment as low energy, depression, and poor memory.  His full-scale IQ was measured at 73 and his working memory skills were in the low average range.  He was viewed as having demonstrated "flippancy and disinterest" during testing, making his scores of questionable value.  The diagnoses and prognosis were essentially unchanged from the 2002 evaluation.  (Tr. 301-10).

Plaintiff's physical condition was evaluated on November 24, 2003, by Dr. Purdy.  She reported that plaintiff's main complaint was chronic fatigue and exhaustion.  A physical examination did not reveal any significant abnormalities.  He denied depression to Dr. Purdy but she noted his flat affect and recommended both a psychiatric evaluation and additional cardiac and pulmonary testing.  She did not think he was a "candidate for physical activities" including most work-related activities.  (Tr. 311-14).  However, his muscle strength and range of joint motions were both essentially normal.  (Tr. 316-19).

Dr. Nickless, a psychologist, reviewed plaintiff's records and reported on November 11, 2003, that he had moderate restrictions in social functioning and maintaining concentration, persistence and pace.  She identified fourteen specific areas of moderate limitation of functioning and two areas of marked limitation, having to do with complex or detailed instructions.  Nevertheless, she thought he could engage in routine, simple tasks.  (Tr. 320-28).

Finally, the office notes of plaintiff's treating physician, Dr. Davis, were submitted.  They showed a long history of treatment for conditions such as asthma, arthritis, anxiety, low back pain, and depression.  They contain few abnormal test results, and at various times plaintiff either reported or denied symptoms such as shortness of breath, chest pain, dizziness, or weakness.  At times he said he was feeling as well as could be

expected.   (Tr. 339-424).

IV.

In addition to plaintiff, a vocational expert, Mr. Hartung, testified at the administrative hearing.  He classified plaintiff's past work as a truck driver as semi-skilled and medium.  His job as a security guard was light and semi-skilled. (Tr. 475).  He was asked to assume that plaintiff could do a limited range of light work (no climbing ladders, ropes or scaffolds, and only occasional stooping, kneeling, crawling, crouching, and climbing stairs) and needed to work in a clean environment.  He was also asked to assume a number of psychological limitations, including a restriction to simple unskilled tasks.  With these limitations, plaintiff could still work as a security guard, at least as he performed that job. (Tr. 476).  If he had a more severe psychological limitation relating to the inability to remember even simple instructions, or if he had to take a ten minute break each hour, he could not work.  (Tr. 477).

V.

Based on the above evidence, the Commissioner found that plaintiff had severe impairments best described as coronary artery disease with minimal ischemia and ejection fraction reduced to 40%, chronic obstructive pulmonary disease, cognitive disorder, not otherwise specified, degenerative arthritis and mild scoliosis.  These impairments limited plaintiff to performing work at the light exertional level with various postural, environmental and psychological restrictions, as described to the vocational expert.  With these restrictions, plaintiff could still perform his past work as a security guard. Consequently, he was found not to be disabled.

VI.

In his Statement of Errors, plaintiff raises the following

issues.  First, he contends that the Commissioner erred in deciding that his anxiety and depression were not severe impairments.  Second, he asserts that the Commissioner's conclusion that he could perform his past relevant work as a security guard despite his cognitive and psychological impairments was erroneous.  The underlying question is whether the Commissioner's decision is supported by substantial evidence.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Commissioner's decision noted that various health care

professionals had alluded to plaintiff's complaints of anxiety and depression, but concluded that these impairments were not shown to have produced significantly limiting symptoms for a period of twelve months, and were therefore not severe. Plaintiff argues that, given the number of different doctors and psychologists who either provided plaintiff some type of treatment (typically medication) for depression, or who noted that he complained of depression and appeared to be depressed, the determination that this impairment was not severe is simply unreasonable and unsupported by the record.

Certainly, there was evidence from which it could be inferred that plaintiff suffered from either depression or anxiety, or both, and that these impairments did have an impact upon his psychological ability to perform some work-related activities even though plaintiff never sought treatment for them. On the other hand, the Commissioner correctly cites to evidence indicating that these impairments, particularly depression, were not clinically significant for any length of time, and that many times when plaintiff was seen by Dr. Davis, he denied any anxiety or depression.  In the final analysis, however, because the Commissioner did find other severe mental impairments and assessed plaintiff's psychological limitations based upon all of the evidence of record, this issue is largely irrelevant to the question of whether the Commissioner's residual functional capacity assessment and ultimate decision is supported by substantial evidence.

In support of his second assignment of error, plaintiff contends that, although the vocational expert testified that plaintiff could work as a security guard in response to the first of two hypothetical questions posed to him by the ALJ, that hypothetical did not comport with the evidence.  He asserts that the overwhelming majority of the mental health evaluators stated

that he was at least moderately impaired in performing most of the psychological demands of work, and that someone with those impairments cannot, as the expert testified, work as a security guard.

The Court agrees with the Commissioner that plaintiff's arguments overstates the extent to which the mental health evaluators found that he would have difficulty even with simple, routine tasks. Although that was Dr. Nickless' conclusion, she also stated, in the narrative portion of her report, that he could do such tasks. Dr. Williams, the other state agency reviewer, found no limitation in this area. The fact that plaintiff's GAF was rated in the low 50s is not an indicator that he cannot due simple, repetitive work, and, again, the narrative reports of some of those examinations confirm at least an average ability to learn and remember new material and an average working memory, all of which are consistent with the ability to do simple, repetitive work.

Where the evidence is in conflict, the Commissioner has the discretion to resolve that conflict as long as there are sound reasons to support that resolution. Here, all of the examiners who expressed opinions about plaintiff had an essentially equal opportunity either to evaluate him in person, or to review the pertinent records, and because the totality of the evidence would support either the plaintiff's or the Commissioner's position, the Court cannot resolve the conflict *de novo*. The Commissioner's decision is entitled to deference here. Thus, because the Commissioner reasonably found that plaintiff's actual psychological limitations were no more severe than those described in the first hypothetical posed to Dr. Hartung, and because Dr. Hartung testified that a person with those limitations could perform the psychological demands of the security guard job, the Commissioner was entitled to rely on that

evidence in finding that the plaintiff was not disabled.

VI.

For the foregoing reasons, the plaintiff's statement of errors is overruled.  This case is dismissed.  The Clerk is directed to enter judgment in favor of the defendant Commissioner.


/s/ Terence P. Kemp
United States Magistrate Judge